JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

18. Cv. 3275

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Mark Tomei, as limited guardian of Vincent H. Tomei
12605 Oak Arbor Lane
Boynton Beach, FL 33436

**(b)** County of Residence of First Listed Plaintiff   Palm Beach, Florida
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Paul A. Bucco, Esquire / Davis Bucco
10 East Sixth Avenue, Suite 100
Conshohocken, PA 19428      610-238-0880

## DEFENDANTS
H&H Manufacturing Company, Inc. and Thomas R. Tomei
2 Horne Drive
Folcroft, PA 19032

County of Residence of First Listed Defendant   Delaware, Pennsylvania
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
   Plaintiff
- ☐ 2  U.S. Government
   Defendant
- ☐ 3  Federal Question
   *(U.S. Government Not a Party)*
- ☒ 4  Diversity
   *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original
   Proceeding
- ☐ 2  Removed from
   State Court
- ☐ 3  Remanded from
   Appellate Court
- ☐ 4  Reinstated or
   Reopened
- ☐ 5  Transferred from
   Another District
   *(specify)*
- ☐ 6  Multidistrict
   Litigation -
   Transfer
- ☐ 8  Multidistrict
   Litigation -
   Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Breach of Employment Agreement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
08/01/2018

SIGNATURE OF ATTORNEY OF RECORD
8/ *Paul A. Bucco*

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AUG 02 2018



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Mark Tomei as limited guardian to Vincent H. Tomei | : | CIVIL ACTION |
| v. | : | 18   3275 |
| H&H Manufacturing Company, Inc. and Thomas R. Tomei | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.           ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.           ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (x)

| | | |
|---|---|---|
| August 1, 2018 | Paul A. Bucco, Esquire | Plaintiff, Mark Tomei, as limited guardian for Vincent H. Tomei |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-238-0880 | 610-238-0244 | paul.bucco@davisbucco.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

AUG 02 2018

**AB**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA** **18    3275**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 12605 Oak Arbor Lane, Boynton Beach, FL 33436 _____

Address of Defendant: _____ 2 Horne Drive, Folcroft, PA 19032 _____

Place of Accident, Incident or Transaction: _____ 2 Horne Drive, Folcroft, PA 19032 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/01/18    /s/ Paul A. Bucco    52561
_____    _____    _____
    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**    *Federal Question Cases:*    **B.**    *Diversity Jurisdiction Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts    ☑ 1. Insurance Contract and Other Contracts
☐ 2. FELA    ☐ 2. Airplane Personal Injury
☐ 3. Jones Act-Personal Injury    ☐ 3. Assault, Defamation
☐ 4. Antitrust    ☐ 4. Marine Personal Injury
☐ 5. Patent    ☐ 5. Motor Vehicle Personal Injury
☐ 6. Labor-Management Relations    ☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Civil Rights    ☐ 7. Products Liability
☐ 8. Habeas Corpus    ☐ 8. Products Liability – Asbestos
☐ 9. Securities Act(s) Cases    ☐ 9. All other Diversity Cases
☐ 10. Social Security Review Cases    *(Please specify):* _____
☐ 11. All other Federal Question Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Paul A. Bucco, Esquire _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 08/01/2018    /s/ Paul A. Bucco    52561
_____    _____    _____
    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)



$400

**DAVIS BUCCO**
By:    Paul A. Bucco, Esquire
        David S. Makara, Esquire
Attorney I.D. Nos. 52561/78241
10 E. 6th Avenue, Suite 100
Conshohocken, PA 19428
(610) 238-0880                                    Attorney for Plaintiff, Mark Tomei,
                                                          guardian of Vincent H. Tomei

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK TOMEI, as limited guardian          :
of Vincent Tomei                                     :
12605 Oak Arbor Lane                            :
Boynton Beach, FL 33436                       :
                                                              :
                            Plaintiff                       :           **18      3275**
            v.                                               :           No.
                                                              :
H&H MANUFACTURING COMPANY,         :
INC. and THOMAS R. TOMEI                  :
2 Horne Drive                                         :           **JURY TRIAL DEMANDED**
Folcroft, PA 19032                                  :
                                                              :
                            Defendants                 :

## COMPLAINT

Plaintiff, Mark Tomei, as guardian of Vincent Tomei, by and through his undersigned

counsel, Davis Bucco, hereby files this complaint against Defendants, H&H Manufacturing, Inc.

and Thomas R. Tomei, and pleads as follows:

1.      Plaintiff, Vincent H. Tomei ("Vincent"), is an adult individual resident at 12605

Oak Arbor Lane, Boynton Beach, Florida.

2.      Mark Tomei, an adult individual resident at 12605 Oak Arbor Lane, Boynton

Beach, Florida, is the guardian of Vincent H. Tomei, the real party in interest, pursuant to a

September 16, 2016 Order from the New Jersey Superior Court in Camden County, a true and

correct copy of which is attached hereto as Exhibit "A."

1

3.      Defendant, H&H Manufacturing Company, Inc. ("H&H"), is a Pennsylvania corporation, with a corporate address of 2 Horne Drive, Folcroft, PA 19032.

4.      Defendant, Thomas R. Tomei ("Thomas") is an adult individual with a business address of 2 Horne Drive, Folcroft, PA 19032.

## JURISDICTION

5.      Plaintiff brings his complaint under federal diversity jurisdiction, pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.00.

## STATEMENT OF FACTS

6.      H&H operates a precision machine shop in Folcroft, Pennsylvania.

7.      Thomas owns, and at all relevant times owned, the majority of the shares of H&H.

8.      Thomas served, and upon information and belief is currently serving, as President of H&H.

9.      Vincent is, and at all relevant times was, employed by and a party to an employment agreement ("Agreement") with H&H to provide "executive services."

10.     Said Agreement was approved by H&H at a July 31, 2000 Special Meeting of its Board of Directors.  A true and correct copy of the Agreement is attached hereto as Exhibit "B."

11.     The Agreement obligates H&H to compensate Tomei for his executive services, including but not limited to a "Base Payment" of $351,000 payable in weekly installments of $6,750.00, (subject to annual two percent increase starting October 1, 2001), as well as "Performance-Based Compensation," "Expenses," "Retirement Payments," "Other Benefits," "Vacations," and "Perquisites," all as set forth in Section 3 of the Agreement.

2

12.     Section 5(c) of the Agreement expressly provides that if Vincent is terminated for cause, or comes under a disability, these situations shall be treated as if Vincent exercised a "Retirement Election," and expressly authorizes Vincent to continue receiving, until his death, the amount of his "Base Payment" from the date of his termination.

13.     Based on his belief that he was an officer and shareholder of H&H, Vincent elected not to collect his full salary for a period of time, and instead, allowed his compensation to remain as capital available for the benefit of H&H, thereby reinvesting in H&H.

14.     Protracted litigation in Court of Common Pleas for Delaware County (2013-5775) ("Litigation") subsequently commenced regarding a dispute over who owned stock in H&H.

15.     During the Litigation the Honorable James Proud appointed Rife & Associates and subsequently Gregory Springer as the court's receiver to manage H&H.

16.     When Tomei requested his salary in 2014, the Receiver denied his request and Vincent was forced to file a motion to obtain the $6,750.00 weekly base wages he was entitled to receive under his employment agreement.

17.     When Tomei's motion was denied, the receiver appointed for the Company was forced to obtain approval by Court Order to pay Tomei; however, only his reduced salary of $3,000.00 per week (less than half of the base wages he was entitled to receive by contract) was approved.

18.     In September 2016, Tomei was legally declared mentally unable to manage many of his day to day affairs, rendering him unable to work, making him further eligible under the "Retirement Election" for continued payment under Sections 4 and 5 of the employment agreement, yet he was not given the payment to which he was entitled.

3

19.     The Litigation concluded with a Decision dated November 30, 2017, that included certain findings of fact and conclusions of law.

20.     The majority shareholder of H&H, Thomas, is in possession of that decision and, as a party to the Litigation, bound by the same.

21.     The November 2017 Decision ruled that Vincent is not a shareholder of H&H, rendering him merely an employee of H&H who has not been compensated in accordance with his employment agreement.

22.     H&H and Thomas have at all times refused, and continue to refuse, to release and/or otherwise fully compensate Vincent with the wages, bonuses, and fringe benefits to which he is entitled, despite repeated demands and his clear right to the same pursuant to Sections 4 and 5 of the Agreement.

**COUNT I**
**WAGE AND PAYMENT ACT**

23.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

24.     The unpaid wages and benefits due Vincent by H&H constitute "wages" under Section 2a, 43 P.S. § 260.2a of the Pennsylvania Wage Payment and Collection Law (the "Act"), 43 P.S. § 260.1 *et seq.*,

25.     H&H's actions and refusal to pay Vincent his wages constitute a violation of the Wage Payment and Collection Law.

26.     Thomas's actions and refusal to pay Vincent, as majority shareholder and/or President of H&H, constitute a violation of the Wage Payment and Collection Law.

27.     Vincent is entitled to institute an action to recover his wages pursuant to Section 9a of the Act.

28.     In addition to the wages owed, Vincent is entitled to an award of attorney's fees pursuant to Section 9a(f) of the Act.

29.     In addition to wages owed, Vincent is entitled to recover liquidated damages under Section 10 of the Act.

30.     Defendants failure to pay Plaintiff's wages was wrongful, intentional, and was done without justification or authorization to do so.

**WHEREFORE**, Plaintiff, Mark Tomei, as guardian of Vincent Tomei, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants H&H Manufacturing, Inc. and Thomas Tomei, in an amount in excess of $75,000.00 on Count I, together with interest, costs, attorney's fees, liquidated damages, and any other relief this Court deems necessary and just.

## COUNT II
## BREACH OF CONTRACT

31.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

32.     Vincent and H&H are parties to the Agreement.

33.     The Agreement obligated H&H to compensate Vincent during his employment and upon his termination/retirement until his death.

34.     Vincent met all of his obligations under the Agreement.

35.     H&H failed to meet its obligations under the requirement, and specifically, failed to make the required wage, fringe benefit, and retirement payments to Vincent under the Agreement.

36.     H&H has breached, and continues to breach, the Agreement and, as a result, Vincent incurred, and continues to incur, foreseeable damages that he seeks to recover in this action.

37.     H&H willfully, intentionally, and without any justification deprived Vincent of his rights under the Agreement.

**WHEREFORE**, Plaintiff, Mark Tomei, as limited guardian of Vincent Tomei, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, H&H Manufacturing, Inc., in an amount in excess of $75,000.00 on Count II, together with interest, costs, and attorney's fees and any other relief this Court deems necessary and just.

## COUNT III
## UNJUST ENRICHMENT

38.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

39.     Vincent provided services and capital investment to H&H, which understood that Vincent expected to be compensated for these services and investments.

40.     H&H continued to accept these services and investments knowing that Vincent expected to be compensated.

41.     In reliance upon H&H's representations Vincent continued to provide these services and investments with the expectation that he would be paid for his services and repaid for his capital investments.

42.     Vincent provided the services and capital investments but has not been compensated for these services or investments and therefore H&H has been unjustly enriched and is liable to Vincent for the fair value of his services and investments to the extent that such services and investments are not covered by the Agreement.

43.     H&H willfully, intentionally, and without any justification deprived Vincent of the fair value of his services and investments.

6

**WHEREFORE**, Plaintiff, Mark Tomei, as limited guardian of Vincent Tomei, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, H&H Manufacturing, Inc., in an amount in excess of $75,000.00 on Count III, in the alternative, together with interest, costs, and attorney's fees and any other relief this Court deems necessary and just.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

**DAVIS BUCCO**

Dated:  August 1, 2018                  By: _S/ Paul A. Bucco_

Paul A. Bucco, Esquire (PA ID 52561)
David S. Makara, Esquire (PA ID 78241)
10 E. 6th Avenue, Suite 100
Conshohocken, PA 19428
*Attorneys for Plaintiff*

7

# EXHIBIT "A"

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement") is made as of the 1st day of August, 2000, by and between H & H MANUFACTURING COMPANY INCORPORATED, a Pennsylvania corporation with its principal place of business at Two Horne Drive, Folcroft Industrial Park, Folcroft, PA 19032 ("Employer") and VINCENT H. TOMEI, an individual residing at 1617 Cedar Avenue, Haddon Heights, NJ 08035 ("Employee").

## RECITALS:

WHEREAS, Employee has been employed by Employer since 1966 and is currently Employer's Chairman of the Board, Chief Executive Officer and Treasurer; and

WHEREAS, Employee's contributions to Employer over the past thirty years have been instrumental to Employer's significant growth and success, and Employee is expected to continue to contribute to Employer's future growth and success; and

WHEREAS, Employer's Board of Directors (the "Board") recognizes that Employee's contribution to the growth and success of Employer has been substantial throughout the term of his employment by Employer and that without his continued leadership and vision Employer would not have achieved and maintained its current preeminent status in the machine and metal parts business, nor would Employer have achieved its performance levels or successfully consummated the many strategic transactions that have taken place during the term of his employment by Employer; and

WHEREAS, the Board desires to assure Employer of Employee's continued employment in an executive capacity and to compensate him therefor, as well as to provide retirement and other benefits to Employee in the event of his retirement from employment; and

WHEREAS, Employee is willing to commit himself to serve Employer on the terms herein provided;

NOW, THEREFORE, in consideration of the foregoing and of the respective covenants and agreements of the parties herein contained, and intending to be legally bound hereby, the parties hereto agree as follows:

1. Continued Service to Employer.  Employer hereby agrees to retain Employee and Employee hereby agrees to continue to serve Employer, as an executive on the terms and conditions set forth herein, for a term commencing on the date hereof and terminating as set forth herein (the "Service Period").

2. Position and Duties.  During the Service Period:

00001
VHT00001

(a)   Offices.  Employee shall serve as Employer's Chairman of the Board, President - Chief Executive Officer and Treasurer, and such other officer position(s) as agreed to by Employee and Employer (unless and until Employee chooses to withdraw from such positions in connection with his making a Retirement Election described in subsection (c) below), and in such positions Employee shall have such powers and duties as may from time to time be prescribed by the Board and Employer's By-Laws.

(b)   Time Devoted.  As long as Employee retains his executive status (i.e., Employee has not made a Retirement Election), he shall continue to devote substantially all of his working time and effort to the business and affairs of Employer.  It is recognized that Employee has a variety of outside interests, and that Employee may devote a reasonable amount of time to such outside interests; subject, however, to all of his obligations to Employer.

(c)   Retirement Election.  Employee may at any time after the date of this Agreement, upon thirty (30) days notice to Employer, elect to retire from his position as an executive of Employer without any executive duties.  Such an election shall be referred to as the "Retirement Election."  If Employee makes the Retirement Election, he nevertheless may from time to time act as a consultant to Employer, performing such consulting services which may be mutually agreed to by Employer and Employee.

(d)   Location of Services.  In connection with his services as an executive to Employer, Employee shall be based at the principal place of business of Employer.

3.   Compensation, Retirement Payments and Related Matters.

(a)   Base Payment.  For each full year included in the Service Period, Employer shall pay Employee a base payment ("Base Payment") for services to be rendered each year by Employee as an executive hereunder of $351,000 gross per annum, payable in weekly installments of $6,750 each.  Effective as of each October 1 (beginning on October 1, 2001) Employer shall increase Employee's Base Payment by an amount equal to 2% of the annual Base Payment for the immediately preceding twelve month period.

(b)   Performance-Based Compensation.  For each full year in the Service Period during which Employee remains an executive of Employer (i.e., Employee has not made a Retirement Election), he may be awarded an annual performance-based cash bonus ("Cash Bonus") of up to 25% of the Base Payment, determined in accordance with, and upon satisfaction of, the performance-based standards that may be established form time to time by the Board.

(c)   Expenses.  For as long as Employee remains an executive during the Service Period, Employee shall be entitled to receive prompt reimbursement for all reasonable expenses incurred by him (in accordance with the policies and procedures established from time to time by the Board for its executive officers) in performing services hereunder.

(d)   Retirement Payments.  If during the Service Period Employee makes a Retirement Election, Employer shall continue to make the Base Payments to Employee for the

00002
VHT00002

remainder of the term of this Agreement as if such Retirement Election had not been made, except that such Base Payments shall not be subject to any further annual increases, but shall remain fixed at the amount in effect on the effective date of the Retirement Election.

(e)     Other Benefits.  Except as otherwise specifically provided herein, for as long as Employee remains an executive during the Service Period, he shall continue to be eligible to participate in all of Employer's current and future employee benefit plans and arrangements including, without limitation, each bonus plan, savings and profit sharing plan, life insurance plan, medical insurance plan, disability plan, dental plan and health and accident plan. Notwithstanding the foregoing, Employee shall not be entitled to participate in any stock ownership plan, stock purchase plan, stock option plan or any other plan or program whereby Employee could increase his stock ownership in Employer, nor shall he participate in any supplement pension or retirement plan except for the retirement benefits set forth herein.  Except as otherwise may be required by law, Employer shall not make any changes in any such employee benefit plans or arrangements which would adversely affect Employee's rights or benefits thereunder, unless such change is applicable to all executives of Employer and does not result in a proportionately greater reduction in the rights of or benefits to Employee as compared with any other executive of Employer.  No amount paid to Employee under any plan or arrangement presently in effect or made available in the future shall be deemed to be in lieu of the annual Base Payment or Cash Bonus payable to Employee pursuant to this Section 3.  In the event any benefit provided for in this Section 3(e) is not able to be granted to Employee because he has elected to retire as an executive of Employer, Employer nevertheless shall be obligated to provide Employee with comparable benefits having a comparable value on an after-tax basis for the remainder of the term of this Agreement as if a Retirement Election had not been made by him.

(f)     Vacations.  So long as he serves as an executive of Employer, Employee shall be entitled to five (5) weeks paid vacation in each calendar year as he is currently entitled. Employee shall also be entitled to all paid holidays given by Employer to its other executive employees.

(g)     Perquisites.  So long as he serves as an executive of Employer, Employee shall be entitled to continue to receive the perquisites and fringe benefits appertaining to his executive status in accordance with Employer's present practices including, without limitation, the use of his current office (or comparable size office if Employer moves the location of its principal office) and a secretary.

4.     Termination.  Employee's executive services hereunder may be terminated by Employer without any breach by Employer of this Agreement under the following circumstances only:

(a)     Death.  Employee's executive services hereunder shall terminate upon his death.

00003
VHT00003

(b)     Disability.  If, as a result of Employee's incapacity due to physical or mental illness, Employee shall have been absent from his duties hereunder for 180 consecutive calendar days, and within 90 days after written notice of termination is given (which may occur before or after the end of such 180 day period), he shall not have returned to the performance of his duties hereunder, Employer may terminate Employee's executive services hereunder.

(c)     Cause.  Employer may terminate Employee's executive services hereunder for Cause.  For purposes of this Agreement, Employer shall have "Cause" to terminate Employee's services hereunder at any time prior to, but not after, a Change of Control (as hereinafter defined), upon:  (i) the willful and repeated failure by Employee to substantially perform his duties hereunder (other than a failure resulting from Employee's incapacity due to physical or mental illness) for a period of 90 days after demand for substantial performance is delivered by Employer specifically identifying the manner in which Employer believes Employee has not substantially performed his duties, or (ii) the willful and repeated engaging by Employee in misconduct which is materially injurious to Employer (monetarily or otherwise) for a period of 90 days after demand to cease such misconduct is delivered by Employer specifically identifying the manner in which Employer believes Employee has materially injured Employer, or (iii) the willful and repeated breach by Employee of any material provision of this Agreement, including, but not limited to, Sections 6, 7 or 8 hereof, for a period of 90 days after demand to cease such breach is delivered by Employer specifically identifying the manner in which Employer believes Employee has breached a material portion of this Agreement.  For purposes of this Agreement, a "Change of Control" shall be deemed to have occurred on the date on which persons or entities other than Employee and his issue (or trusts for their benefit) first acquire more than fifty percent (50%) of the voting power over all outstanding voting shares of Employer.  For purposes of this Agreement, no act, or failure to act, on Employee's part shall be considered "willful" unless done, or omitted to be done, by him not in good faith and without reasonable belief that his action or omission was in the best interest of Employer.  Notwithstanding the foregoing, Employee shall not be deemed to have been terminated for Cause unless and until there shall have been delivered to Employee a copy of a resolution, duly adopted by the affirmative vote of not less than two-thirds of the entire membership of the Board at a meeting of the Board called and held for such purpose (after reasonable notice to Employee and an opportunity for him, together with his counsel, to be heard before the Board), finding that in the good faith opinion of the Board Employee was guilty of conduct set forth above in clauses (i), (ii) or (iii) of this subparagraph (c), and specifying the particulars thereof in detail.

(d)     Notice of Termination.  Any termination of Employee's executive services by Employer shall be communicated by a written notice indicating the specific termination provision in this Agreement relied upon and setting forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of Employee' services under the provision so indicated.

5.     Compensation Upon Termination.

00004
VHT00004

(a)     <u>Death</u>. If Employee's services as an executive shall be terminated by reason of his death, or if Employee's death occurs after he has made a Retirement Election, Employer shall (i) pay to Employee's estate all of his compensation and benefits (including any retirement payments) due or otherwise accrued through the date of death, (ii) pay to his living spouse, if any, during her lifetime the gross amount of $3,000 per week; which amount shall be increased on each annual anniversary of the date of Employee's death by an amount equal to 2% of the weekly payment made to Employee's spouse during the preceding annual period, and (iii) provide to his living spouse, if any, during her lifetime any medical, dental and accident insurance that might otherwise have been provided to him as of the date of his death. After the death of both Employee and his living spouse, the term of this Agreement shall expire, and Employer's obligation to pay any compensation and benefits (including any retirement payments) to Employee or his living spouse hereunder shall terminate.

(b)     <u>Disability</u>. If Employee's services as an executive shall be terminated by reason of his disability pursuant to Section 4(b) hereof, Employee shall thereupon be deemed to have made a Retirement Election, and Employer shall continue to pay to Employee all of his compensation and benefits (including retirement payments) due or otherwise accrued until the date of his death, at which time the provisions of Section 5(a) hereof shall apply.

(c)     <u>Cause</u>. If Employee's services as an executive shall be terminated for Cause pursuant to Section 4(c) hereof, Employee shall thereupon be deemed to have made a Retirement Election, and Employer shall continue to pay to Employee all of his compensation and benefits (including retirement payments) due or otherwise accrued until the date of his death, at which time the provisions of Section 5(a) hereof shall apply.

(d)     <u>Other Terminations</u>. If, in breach of this Agreement, Employer shall terminate Employee's executive services other than by reason of death, disability or Cause (it being understood that a purported termination by Employer pursuant to Section 4(b) or 4(c) hereof, which is disputed and finally determined not to have been proper, shall constitute a breach of this Agreement by Employer), then Employer shall continue to pay Employee all of his compensation and benefits pursuant to Section 3 hereof until the date of his death, at which time the provisions of Section 5(a) hereof shall apply. Such a termination of Employee's executive services shall also be deemed to constitute a Change of Control for purposes of this Agreement.

(e)     <u>No Mitigation</u>. Employee shall not be required to mitigate the amount of any payment provided for in this Section 5 by seeking other employment or otherwise, nor shall the amount of any payment provided for in this Section 5 be reduced by any compensation that may be earned by Employee as a result of employment by another employer after the date of termination of his executive services, or otherwise.

(f)     <u>Change of Control</u>. Notwithstanding anything herein to the contrary, in the event Employee's executive services are terminated on or after the occurrence of a Change of Control, such termination shall in no circumstances be treated under this Agreement as a termination for Cause, and Employee shall be entitled to the same compensation and benefits as

00005
VHT00005

are payable with respect to a termination of Employee's executive services subject to the provisions of subsection (d) hereof.

      6.    <u>Confidential Information</u>. Employer, pursuant to Employee's employment hereunder, provides him access to and confides in him business methods and systems, techniques and methods of operation developed at great expense by Employer ("Trade Secrets") and which Employee recognizes to be unique assets of Employer's business. Employee shall not, at any time during or after the Service Period, directly or indirectly, in any manner utilize or disclose to any person, firm, corporation, association or other entity any Trade Secrets. except (i) where required by law, (ii) to officers, directors, consultants or employees of Employer in the ordinary course of his duties or (iii) during his employment and in the ordinary course of his services as an officer of Employer for such use and disclosure as he shall reasonably determine to be the best interest of Employer.

      7.    <u>Noncompetition, Noninterference and Nonsolicitation</u>.

      (a)    <u>Non-Competition</u>. Subject to the geographic limitation set forth herein, Employee agrees that during the term of this Agreement, he shall not, directly or indirectly, on his behalf or on behalf of any person, firm, corporation, association or other entity, as an employee or otherwise, engage in, or in any way be concerned with or negotiate for, or acquire or maintain any ownership interest in, any business or activity that is the same as or competitive with that conducted by Employer at the termination of his service, or that was engaged in or developed by Employer at any time during the Service Period for specific implementation in the immediate future by Employer. The provisions of this subsection (a) shall be applicable to Eastern Pennsylvania and any other geographic location in which Employer may be engaged in business during the Service Period or, with respect to Employee's obligation following termination of his service, at the termination of his service.

      (b)    <u>Noninterference</u>. Employee agrees that during the term of this Agreement, he will not, directly or indirectly, for himself or on behalf of any third party at any time in any manner, request or cause any of Employer's customers to cancel or terminate any existing or continuing business relationship with Employer; solicit, entice, persuade, induce, request or otherwise cause any employee, officer or agent of Employer to refrain from rendering services to Employer or to terminate his or her relationship, contractual or otherwise, with Employer; induce or attempt to influence any supplier to cease or refrain from doing business or to decline to do business with Employer; divert or attempt to divert any supplier from Employer; or induce or attempt to influence any supplier to decline to do business with any businesses of Employer as such businesses are constituted immediately prior to the termination of service.

      (c)    <u>Nonsolicitation</u>. Employee agrees that during the term of this Agreement, he will not, directly or indirectly, for himself or on behalf of any third party, solicit for business, accept any business from or otherwise do, or contract to do business with any person or entity who, at the time of, or any time during the 12 months preceding such termination, was an active

00006
VHT00006

customer or was actively solicited by Employer according to the books and records of Employer and within the actual knowledge of Employee.

8.    Equitable Remedies. Employee acknowledges that his compliance with the covenants in Sections 6, 7 and 8 of this Agreement is necessary to protect the good will and other proprietary interests of Employer and that, in the event of any violation by Employee of the provisions of Sections 6, 7 or 8 of this Agreement, Employer will sustain serious, irreparable and substantial harm to its business, the extent of which will be difficult to determine and impossible to remedy by an action at law for money damages. Accordingly, Employee agrees that, in the event of such violation or threatened violation by Employee, Employer shall be entitled to an injunction before trial from any court of competent jurisdiction as a manner of course and upon the posting of not more than a nominal bond in addition to all such other legal and equitable remedies as may be available to Employer. Employee further agrees that, in the event any of the provisions of Sections 6, 7 or 8 of this Agreement are determined by a court of competent jurisdiction to be contrary to any applicable statute, law or rule, or for any reason to be unenforceable as written, such court may modify any such provisions so as to permit enforcement thereof as thus modified.

9.    Successors; Related Companies; Binding Agreement.

(a)    Successors. Employer will require any successor (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business and/or assets of Employer, by agreement in form and substance satisfactory to Employee, to expressly assume and agree to perform this Agreement in the same manner and to the same extent that Employer would be required to perform it if no such succession had taken place. Failure of Employer to obtain such agreement prior to the effectiveness of any such succession shall be a breach of this Agreement and shall entitle Employee to compensation from Employer in the same amount and on the same terms as he would be entitled to hereunder pursuant to Section 5(d) hereof. As used in this Agreement, "Employer" shall mean H & H Manufacturing Company Incorporated and any successor to its business and/or assets as aforesaid which executes and delivers the agreement provided for in this Section 9 or which otherwise becomes bound by all the terms and provisions of this Agreement by operation of law.

(b)    Related Companies. For purposes of Sections 6, 7, 8 and 9 hereof, the term "Employer" shall mean H & H Manufacturing Company Incorporated, as well as any entity in control of, controlled by, or under common control with H&H Manufacturing Company Incorporated.

(c)    Benefit. This Agreement and all rights of Employee hereunder shall inure to the benefit of and shall be binding upon Employee and his personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees.

10.    Entire Agreement. This Agreement constitutes the full and complete understanding and agreement of Employee and Employer respecting the subject matter hereof,

00007
VHT00007

and supersedes all prior understandings and agreements with respect to such subject matter, whether oral or written, express or implied. This Agreement may not be modified or amended orally but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

     11.    Headings. This section headings of this Agreement are for convenience of reference only and are not to be considered in the interpretation of the terms and conditions of this Agreement.

     12.    Notices. Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given when sent by certified mail, postage prepaid, addressed as follows:

                If to Employer:

                H & H Manufacturing Company Incorporated
                Two Home Drive
                Folcroft Industrial Park
                Folcroft, PA  19032
                Attention:  President

                If to Employee:

                Mr. Vincent H. Tomei
                1617 Cedar Avenue
                Haddon Heights, NJ  08035

     Any party may change the persons and address to which notices or other communications are to be sent by giving written notice of such change to the other party in the manner provided herein for giving notice.

     13.    Waiver of Breach. No waiver by either party of any condition or of the breach by the other of any term or covenant contained in this Agreement, whether by conduct or otherwise, in any one or more instances shall be deemed or construed as a further or continuing waiver of any such condition or breach or a waiver of any other condition, or of the breach of any other term or covenant set forth in this Agreement. Moreover, the failure of either party to exercise any right hereunder shall not bar the later exercise thereof.

     14.    Nonalienation. Employee shall not pledge, hypothecate, anticipate or in any way create a lien upon any amounts provided under this Agreement. This Agreement and the benefits payable hereunder shall not be assignable by either party without the prior written consent of the other.

PHI\765919.1               - 8 -

00008
VHT00008

15.     <u>Governing Law</u>.  This Agreement is entered into and shall be construed in accordance with the internal laws of the Commonwealth of Pennsylvania.

16.     <u>Invalidity of Unenforceability</u>.  If any term or provision of this Agreement is held to be invalid or unenforceable, for any reason, such invalidity or unenforceability shall not affect any other term or provision hereof and this Agreement shall continue in full force and effect as if such invalid or unenforceable term or provision (to the extent of the invalidity or unenforceability) had not been contained herein.

17.     <u>Counterparts</u>.  This Agreement may be executed in on or more counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

H & H MANUFACTURING COMPANY
INCORPORATED

Attest: _Marie L Tomei_                  By: _____
    Marie L. Tomei                       Name:   Vincent H. Tomei
    Secretary                            Title:     President


Witness: _____           _____
                                         Vincent H. Tomei

00009
VHT00009

# EXHIBIT "B"

**DUANE MORRIS** LLP
A DELAWARE LIMITED LIABILITY PARTNERSHIP
By:     James J. Ferrelli (043761984)
        Christopher L. Soriano (032142003)
1940 Route 70 East, Suite 100
Cherry Hill, NJ 08003-2171
Telephone: +1 856 874 4200
Fax: +1 856 424 4446

*Attorneys for Plaintiff Mark R. Tomei, as attorney-in-fact for Vincent H. Tomei*
*pursuant to Durable Power of Attorney*

| | |
|---|---|
| In the Matter of Vincent H. Tomei, an alleged incapacitated person. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: PROBATE PART CAMDEN COUNTY |

DOCKET NO.: CP-0149-2016

Civil Action

**JUDGMENT OF DIMINISHED LEGAL
CAPACITY AND APPOINTMENT OF
LIMITED GUARDIANSHIP**

**THIS MATTER** being opened to the Court by James J. Ferrelli, Esquire of Duane

Morris LLP, attorney for Plaintiff Mark R. Tomei, in the presence of Jenifer Fowler, Esquire,

attorney for the then alleged incapacitated person, and Vincent H. Tomei, the then alleged

incapacitated person, and no demand having been made for a jury trial, and the Court sitting

~~without a jury having found from the report of Jenifer Fowler, Esquire, together with the reports~~

of the examining doctors, Dr. Carla Rodgers, dated November 22, 2015, June 7, 2016, and

August 28, 2016, and Dr. Laurence Miller, dated May 24, 2016, and proofs given that Vincent H.

Tomei is a partially incapacitated person who has diminished capacity to govern himself and to

manage all of his affairs, and it further appearing that the Plaintiff, Mark R. Tomei, consents to

serve as Guardian of the Person and Estate of Vincent H. Tomei, and for good cause shown based upon the evidence presented:

IT IS on this ____ day of September, 2016, ORDERED AND ADJUDGED that:

1.      Vincent H. Tomei (hereinafter "Vincent"), although not fully incapacitated, is a partially incapacitated person and is unfit and unable to govern himself and manage all of his affairs, and appointment of a Limited Guardian pursuant to N.J.S.A. 3B:12-24.1(b) is appropriate.

2.      Vincent is incapacitated, and not fully able to govern himself and manage his affairs with respect to the following areas:

        a.      Vincent is presently engaged in a number of litigation matters in courts in Pennsylvania and New Jersey against his older son, Thomas R. Tomei, regarding the family-owned business, H&H Company, and certain family trusts in which Thomas R. Tomei is the alleged beneficiary, but does not have the capacity to continue to participate in, assist his counsel, or testify in litigation matters;

        b.      With respect to H&H Company, Vincent does not have the capacity to handle the decisions and responsibilities which are within the authority of a CEO of a multimillion dollar corporation and business with respect to strategic planning, management, personnel, crisis management, and other areas of the business.

3.      At this time, Vincent is fully able to govern himself and manage his own affairs with respect to the following areas:

        a.      Vincent is capable of choosing and can continue to choose where and with whom he lives;

2

b.      Vincent is capable of making decisions and can continue to make decisions about his activities of daily living, including but not limited to grooming, food choices, and hygiene;

c.      Vincent is capable of managing and can continue to manage his and his wife's personal financial affairs, including but not limited to management of their money, investment portfolio, ~~personal trusts~~, real and personal property, and other assets;

d.      Vincent knows who his natural heirs are, and has already had a will prepared, and is capable of making decisions about any changes to his will;

e.      Vincent is capable of making decisions about, and can continue to make decisions about his own medical care and treatment, including selecting his doctors and following or not following their recommendations;

f.      Vincent has been following the current election and is capable of voting, and may continue to exercise this right; and

g.      ~~Notwithstanding the Court's findings and determination regarding Vincent's incapacity set forth in paragraph 2 above, Vincent does have longstanding, in-depth knowledge of the H&H Company, and to the extent that the current officers, executives, or receiver running the company are comfortable and desire to obtain input from Vincent, Vincent may provide consultation regarding the H&H Company as those officers, executives, or receiver may request from time to time in their sole judgment.~~

4.      Plaintiff Mark R. Tomei, who is the younger son of Vincent and is duly qualified according to law, be and hereby is appointed as Limited Guardian of the Person and Estate of Vincent H. Tomei, and that Letters of Guardianship of the Person and Estate be issued upon (a) his acknowledging to the Surrogate of Camden County, upon receipt of a copy of the guardian's

3

~~manual and guardianship reporting forms, the receipt of the same, and (b) entering into a surety bond unto the Superior Court of New Jersey in the amount of $_____, which bond shall contain the conditions set forth in *N.J.S.A.* 3B:15-7 and *R.* 1:13-3. The court shall approve the bond as to form and sufficiency.~~

5.     Upon qualifying, the Surrogate of Camden County shall issue Letters of Guardianship of the Person and Estate to Vincent H. Tomei, and thereupon Mark R. Tomei be and hereby is authorized to perform all the functions and duties of a Guardian as allowed by law with respect to the areas of decision-making set forth in paragraph 2 above.

6.     The Guardian appointed hereunder, Mark R. Tomei, shall be considered the personal representatives under the Standards for Privacy of Individually Identifiable Health Information ("Privacy Rule") issued pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and shall have full and complete access to all records of Vincent H. Tomei.

7.     The preparation and filings of (a) a report of well-being, (b) a report of financial accounting, and (c) an inventory of all of the incapacitated person's property and income by Mark R. Tomei are hereby waived because they are unnecessary, due to the nature and scope of the Limited Guardianship pursuant to this Judgment. ~~The waiver of said periodic accounting and reports do not replace or satisfy the duty to file and bring on for approval such a formal accounting or reports as may be required by further Order of the Court.~~

8.     The Guardian, Mark R. Tomei, is hereby directed to advise the Surrogate of Camden County within ten (10) days of any changes in the address or telephone number of himself or herself or the incapacitated person or within thirty (30) days of the incapacitated person's death or of any major change in status or health.

4

9.     The Guardian, Mark R. Tomei, shall cooperate fully with any Court staff or volunteers until the guardianship is terminated by the death or return to capacity of Vincent H. Tomei or the Guardian's death, removal or discharge.

10.     The Court having reviewed the affidavit or certification of services of Jenifer Fowler, Esquire, previously filed with the court, Vincent H. Tomei, shall pay Jenifer Fowler, Esquire, the court-appointed attorney for Vincent H. Tomei, a fee of $ 7227. 50 for professional services rendered and $ 0 for expenses incurred, which disbursements are hereby approved.

11.     James J. Ferrelli, Esquire of Duane Morris LLP, counsel for plaintiff, shall serve a copy of this Judgment upon all interested parties and attorneys of record within seven (7) days from the receipt thereof.

12.     Jenifer Fowler, Esquire, Court appointed attorney for Vincent H. Tomei, having reported to the court and advocated on behalf of the incapacitated person, be and hereby is discharged from any further obligation to act as attorney for Vincent H. Tomei.

13.     Nothing in this Judgment shall affect or limit the Durable Power of Attorney pursuant to which Mark R. Tomei is appointed as attorney-in-fact for Vincent, and Mark R. Tomei may continue to serve and exercise his authority as attorney-in-fact for Vincent pursuant to the Durable Power of Attorney previously executed by Vincent.

14.     Nothing in this Judgment shall affect or limit Vincent's Combined Advance Directive for Health Care [Combined Proxy and Instruction Directive] dated October 2, 1995, as amended by the Addendum dated February 13, 2013.

_____
NAN S. FAMULAR, P.J.Ch.

DM2\6652078.1

5